IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| JAMES JOSEPH MAIN, JR., | Cause No. CV 25-74-GF-DWM |
| Petitioner, | |
| vs. | ORDER |
| WARDEN BILLIE REICH and ATTORNEY GENERAL OF THE STATE OF MONTANA, | |
| Respondents. | |

This case comes before the Court on Petitioner James Joseph Main, Jr.'s ("Main") petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.) Main was directed to show cause why his petition should not be dismissed for failure to comply with the statute of limitations. (Doc. 20.) After an extension, Main filed a response. (Doc. 24.) Main's petition is dismissed.

## A. Federal Statute of Limitations

A one-year limitations period applies to petitions filed by state prisoners under 28 U.S.C. § 2254. *See* 28 U.S.C. § 2244. Absent a reason to apply one of the other "trigger" dates in 28 U.S.C. § 2244(d)(1), Main's federal petition had to be filed within one year of the date his conviction became final. *See* 28 U.S.C. § 2244(d)(1)(A).

1

Main's conviction likely became final 90 days after the Montana Supreme Court's ruling on his direct appeal, that is, on October 10, 2011. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). Unless a petition for postconviction relief, a motion to withdraw his guilty plea, or some other request for collateral review in state court was pending after that date, Main should have filed his federal petition on or before October 10, 2012.

However, Main did file a petition for postconviction relief in state court, on April 26, 2012, thus stopping his federal clock after 198 days had run. Main's appeal of the denial of that petition was decided on November 19, 2013, and the clock started again. He then had 167 days remaining on his federal clock to file his petition, which makes the deadline for his federal petition May 6, 2014. Main appears to have filed more than a decade too late, on August 29, 2025.

**B. Analysis**

Main responds to the Court's Order with four contentions: he is actually innocent for three reasons), and he exercised diligence but various interference by attorneys prevented him from filing on time. (Doc. 24.) The Court will address these in reverse order.

1. Equitable Tolling

The Court advised Main that he might be eligible for equitable tolling of the statute of limitations if he shows that he has been pursuing his rights diligently, but

2

an extraordinary circumstance stood in his way and prevented him from filing on time. *Holland v. Florida*, 560 U.S. 631, 649 (2010). In response, Main asserts that he "received false advice from several appellate attorneys that had conflict of interest and then incompetently delayed filing" his "appellate briefing." (Doc. 24 at 8.)

AEDPA's limitations period may be equitably tolled because it is a statute of limitations, not a jurisdictional bar. *Holland*, at 645-46. A petitioner bears the burden of establishing that equitable tolling is warranted. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006) ("Our precedent permits equitable tolling of the one-year statute of limitations on habeas petitions, but the petitioner bears the burden of showing that equitable tolling is appropriate."). "To be entitled to equitable tolling, a habeas petitioner must demonstrate two things: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Williams v. Filson*, 908 F.3d 546, 558 (9th Cir. 2018); *Yeh v. Martel*, 751 F.3d 1075, 1077 (9th Cir. 2014). "This is a very high bar, and is reserved for rare cases." *Yeh*, 751 F.3d at 1077.

Equitable tolling is usually unavailable, unless "external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim." *Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999)*. To be entitled to equitable tolling,

the "petitioner must [] show that the extraordinary circumstances were the cause of his untimeliness and that the extraordinary circumstances made it impossible to file a petition on time." *Ramirez v. Yates*, 571 F.3d 993, 997 (9th Cir. 2009) (internal quotation marks and citations omitted). The threshold for triggering equitable tolling is very high, lest the exception swallow the rule. *See Porter v. Ollison*, 620 F.3d 952, 959 (9th Cir. 2010).

Main's brief in support of his contention that he diligently pursued his petition features a chronology of his legal efforts between the time of the direct appeal of his conviction, in 2011, until the time he filed this petition in this Court. (Doc. 24 at 8 – 11.) In 2009, prior to his appeal, Main "filed paperwork with the Montana Innocence project." (Doc. 24 at 9.) In 2011, his state appellate attorney told him to file a postconviction petition. (Doc. 24 at 8.) She sent him his file at Cascade County Detention Center, and certain photographs were removed from it before he received it. (Doc. 24 at 9.) Main moved between Cascade County Detention, Crossroads Correctional Center in Shelby, Montana, and Montana State Prison, between 2009 and 2013. *Id.*

Main filed some form of postconviction in state court, which was denied in 2013. *Id.* At that point, Main understood that a federal filing was the next step. He contacted the Innocence Project, and an attorney there advised him "not to file because [he] might make mistakes if [he] represented" himself. Main's brief then

4

focuses on the Innocence Project, which had his file and communicated with him during this time. In 2015, he met with attorneys and investigators from the Innocence Project. (Doc. 24 at 9.) He met with the counsel for his co-defendant in the underlying conviction, but he was then told that she was acting as an investigator for the state, and not her co-defendant's attorney. (Doc. 24 at 10.) She interviewed him and recorded the interview, which was eventually used in Main's co-defendant's hearing.

Four years later, in 2019, a new attorney, possibly with the Innocence Project, came to Montana State Prison and told Main to sign a brief that would be filed as a pro se postconviction brief in the state district court. (Doc. 24 at 10.) Main did not read the brief fully prior to signing, and only later understood it did not include some of the evidence he wished to present. (This petition is in the Court's record with the State's filings at Doc. 14-10, filed April 26, 2019.) At some point after this meeting, Main called the Innocence Project and learned that the attorney no longer worked there. (Doc. 24 at 10.) At that time, Main was told that the Innocence Project could no longer represent him, due to a conflict of interest with another client. The Innocence Project filed a motion for appointment of counsel for him in the state court, and attorney Lisa Kauffman was assigned to his case. (Doc. 24 at 10.) Main asked for different counsel and he was assigned Laura Reed. Main realized that Reed had been involved in the original

5

investigation of his case, in 2007, so Main concluded she had a conflict and attempted to discuss it with her. She would not respond and then filed a brief without Main's consent. *Id.* Main's timeline becomes confusing here, because which brief this was is not stated. Main then claims that Chad Wright filed a postconviction petition for Main on April 24, 2019, but then, in the next sentence, refers to "Mr. Wright's 2022 petition." (Doc. 24 at 11.)

In conclusion, Main states that he was in contact with the Innocence Project and public defender's office attorneys from 2013, when his first state postconviction was denied. He followed their instructions about when to file, and when he asked them to file in federal courts, they told him in 2013 that he had to exhaust his state remedies first. (Doc. 24 at 11.) Main cites *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000), in this context, for the proposition that an attorney must file an appeal if his or her client requests it, making his attorneys' actions "extraordinary circumstances" that prevented him from timely filing. But *Flores-Ortega* is inapt. It relates to criminal appeals. A postconviction petition in federal court is not an appeal of a state proceeding.

Main has failed to show that extraordinary circumstances prevented him from filing on time. The Montana Supreme Court affirmed the denial of his original state postconviction on November 19, 2013. *Main v. State*, 2013 MT 350N, 2013 WL 6097819. Main did not file in this Court for a further twelve years.

6

Main blames this delay on attorneys, but there are three flaws in this argument.

First, not all of these attorneys who advised him were actually his attorney. From his recitation of the timeline, from the time his appellate attorney told him to file a postconviction petition in 2011 until he was appointed counsel in 2019, he was not represented by counsel. The crucial period in which he should have filed his federal petition was in 2013 and 2014. He has identified no impediment that stopped him from filing at that point, other than his desire to have an attorney represent him.

Subsequently, Main definitely discussed his case with Innocence Project attorneys, but the brief they allegedly drafted for him was filed pro se.  If Main wanted to, he could have filed on his own in federal court at any time. Pro se status or procedural ignorance, by themselves, do not warrant equitable tolling. *Johnson v. United States*, 544 U.S. 295, 311 (2005). The Ninth Circuit instructs that "a pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling." *Rasberry v. Garcia*, 448 F. 3d 1150, 1154 (9th Cir. 2006); see also, *Ford v. Pliler*, 590 F. 3d 782, 789 (9th Cir. 2009) (equitable tolling "standard has never been satisfied by a petitioner's confusion or ignorance of the law alone"); *Waldron-Ramsey v. Pacholke*, 556 F. 3d 1008, 1013 n. 4 (9th Cir. 2009)("[A] pro se petitioner's confusion or ignorance of the law is not, itself, a circumstance warranting equitable tolling.").

7

Second, the attorneys were right that Main had to exhaust his state remedies, which he may have done as far back as 2013, when his state petition was denied. Main never explains why he did nothing to further his case between that 2013 denial and his new 2019 state petition.

Third, even if the attorneys had some obligation that is not apparent from Main's brief, any negligence on their part is not an extraordinary circumstance that warrants equitable tolling. A habeas petitioner's attorney is generally his "agent," and "[u]nder 'well-settled' agency law, the principal bears the risk of his agent's negligent conduct." *Maples v. Thomas*, 565 U.S. 266, 267 (2012)(*quoting Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). Even if counsel engages in misconduct, such as failure to act in a timely manner, a court is not permitted to overlook the untimeliness of a petition. *See Gibbs v. Legrand*, 767 F. 3d 879, 885 (9*th* Cir. 2014). There are exceptions, however, to this rule. If counsel's actions rise to the level of egregious professional misconduct, a habeas petitioner may be entitled to equitable tolling. *See Holland*, 560 U.S. at 651-52; *Luna v. Kernan*, 784 F. 3d 650, 648 (9*th* Cir. 2015) (noting that petitioner's counsel acted in an "utterly deficient and unprofessional manner" and the mistakes made were not run-of-the-mill and were "far enough outside the range of behavior that reasonably could be expected in a typical case.")

To determine whether equitable tolling based upon attorney error is

8

appropriate, courts are to consider the gravity of counsel's errors. Equitable tolling is not available for "garden variety" negligence. *See Holland*, 560 U.S. at 651-52. To obtain equitable tolling based on attorney error, a petitioner must show that his attorney's misconduct constituted an "extraordinary circumstance" and that the misconduct caused the late filing. *Id.* at 653. Even if Main were considered to have been represented by Innocence Project attorneys, which he was not, Main has not identified any attorney error that one impeded his filing. Main is not entitled to equitable tolling.

2. Actual Innocence

The Court's Show Cause Order also advised Main that one method to have his untimeliness excused is new evidence to prove that, more likely than not, no reasonable fact-finder could find him guilty beyond reasonable doubt. *McQuiggin v. Perkins*, 569 U.S. 383, 387 (2013). In *McQuiggin*, the Supreme Court held that the "actual innocence gateway" to federal habeas review that applies to procedural bars in *Schlup v. Delo*, 513 U.S. 298, 327 (1995), and *House v. Bell*, 547 U.S. 518 (2006), extends to petitions that are time-barred under AEDPA. *See Schlup*, 513 U.S. at 329 (petitioner must make a credible showing of "actual innocence" by "persuad[ing] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.").

9

A petitioner claiming actual innocence must satisfy the *Schlup* standard by demonstrating "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Lee v. Lampert*, 653 F. 3d 929, 938 (9th Cir. 2011) (en banc).  In the federal habeas context "actual innocence" means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992).

To make a credible claim of actual innocence, petitioner must produce "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup,* 513 U.S. at 324.  The habeas court then considers all the evidence: old and new, incriminating and exculpatory, admissible at trial or not.  *House*, 547 U.S. at 538.  On this complete record, the court makes a "probabilistic determination about what reasonable, properly instructed jurors would do." *Id.* (quoting *Schlup*, 513 U.S. at 330).

The miscarriage of justice exception "is limited to those *extraordinary* cases where the petitioner asserts his [actual] innocence and establishes that the court cannot have confidence in the contrary finding of guilt." *Johnson v. Knowles*, 541 F. 3d 933, 937 (9th Cir. 2008)(emphasis in original). "[A] credible showing of actual innocence may allow a prisoner to pursue his constitutional claims [ …] on the merits notwithstanding the existence of a procedural bar to relief." *McQuiggin,*

10

569 U.S. at 392. "This rule, or fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Id.* (quotations omitted). The Supreme Court has explicitly stated that the miscarriage of justice exception "applies to a severely confined category," cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted the petitioner.'" *McQuiggin*, 569 U.S. at 395 (quotations and citations omitted).

"The meaning of actual innocence as formulated by *Sawyer* and *Carrier* does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty." *Schlup*, 513 U.S. at 329; *see also United States v. Avery*, 719 F.3d 1080, 1083 (9th Cir. 2013). "A petitioner need not show that he is 'actually innocent' of the crime he was convicted of committing; instead, he must show that a court cannot have confidence in the outcome of the trial." *Majoy v. Roe*, 296 F. 3d 770, 776 (9th Cir. 2002).

Main identifies three pieces of "newly discovered evidence" that he claims establish his actual innocence. The first and second pieces of evidence are intended to support his contention that the victim did not die as a result of his actions. First, Main points to six crime scene photographs taken by Havre Police Officer Bill

11

Wilkenson. (Doc. 24 at 2.) Main asserts that Wilkenson took six photos of the victim that were never turned over to the defense, in violation of *Brady v. Maryland*. (Doc. 24 at 2.) Main asserts these photos were deliberately withheld. He claims they show the victim's condition at 1:30 a.m., which is meaningfully different from the victim's condition and circumstances at 3:30 a.m., which were the photos the jury was shown. *Id*. Main alleges that the photos somehow show that the victim was still alive later than the coroner testified. But the evidence he relies on in his brief to establish that the victim was still alive includes the coroner's report, testimony at trial, and the pathologist's report, which were available at trial. (Doc. 24 at 3.)

The second piece of newly discovered evidence that Main contends shows his actual innocence is a crime scene video recorded by Havre Police Officer Jason Barkus, similarly intended to show that the victim's body was moved between when first responders arrived, and the coroner examined the body. (Doc. 24 at 4.) Parts of the audio of this tape were played for the jury, but not the video. (Doc. 24 at 5.) Another officer's video, taken two hours later, was played for the jury, which was told that this video was the only video taken of the scene. (Doc. 24 at 6.) Main contends that a photographic forensic expert analyzed the audio that was provided for the jury and determined that it had been altered. (Doc. 24 at 5.) Main contends the video was improperly withheld, but he only speculates as to what evidence it

would provide the jury. (Doc. 24 at 5.)

These photos and videos are not evidence of Main's innocence. At most, they might be evidence that reflects a change in position of the victim, or a different angle of photograph, or a different quality of photograph. Even if these missing photos and video were turned over, they would not prove that Main did not commit the crime for which he was found guilty—deliberate homicide by accountability. (Doc. 13-12.) In Montana, a person is guilty of deliberate homicide by accountability if the person commits "or is legally accountable for the attempt or commission of . . . aggravated assault . . . and in the course of the forcible felony or flight thereafter, the person or any person legally accountable for the crime causes the death of another human being." Mont. Code Ann. § 45-5-102(1)(b). The prosecution does not need to prove the "'purposely or knowingly' element of the crime of deliberate homicide." *State v. Kills on Top*, 241 Mont. 378, 387, 787 P.2d 336, 341 (1990) (citations omitted). Instead, the defendant's intent to commit the underlying felony supplies the intent for all subsequent consequences, including homicide. *State v. Nichols*, 225 Mont. 438, 449, 734 P.2d 170, 176 (1987).

Here, the jury concluded that Main committed the underlying felony of aggravated assault that, according to the medical examiner, was a probable cause of the victim's death. The record included witness and physical testimony of Main's assault on the victim. Main himself does not dispute that the assault

13

occurred, only its severity. (Doc. 24 at 8 (calling it a "minor altercation").) The jury concluded otherwise, and the possible movement of the body after the initial arrival of first responders would not change that assessment.

Main's third piece of new evidence relates to his own injuries. Main was involved in more than one altercation the night of the events underlying his conviction, including, at least, with the victim, and with a witness. Pictures were taken of his condition that night, as well as ten days later. (Doc. 24 at 7.) Main's claim regarding these photographs is not clear, though he appears to assert that the injuries were a result of the assault by one of the witnesses, and not due to an altercation with the victim. (Doc. 24 at 8.) The photos from the night would, apparently, show the severity of the assault by the witness. (Doc. 24 at 7.)

Main's assertions and conjecture regarding these injury photos do not constitute conclusive evidence of innocence, nor has he shown that no reasonable juror could have convicted him in light of this "new" evidence. *See McQuiggin*, 569 U.S. at 399. The jury concluded that Main had assaulted the victim, based on all of the evidence presented, including blood evidence. Whether they also believed that Main had been assaulted by the witness, as well, would not change that calculus. Also, the jury is capable of applying their common sense and experience in determining what a picture of ten-day old wounds might represent, as far as severity. Main has failed to meet his burden. He is not entitled to an

14

equitable exception to the statute of limitations. The petition remains untimely. Accordingly, this matter is dismissed with prejudice.

## IV. CERTIFICATE OF APPEALABILITY

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Where a claim is dismissed on procedural grounds, the court must also decide whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Gonzalez v. Thaler*, 656 U.S. 134, 140-41 (2012) (quoting *Slack*, 529 U.S. at 484).

Main has not made a substantial showing that he was deprived of a constitutional right. He has failed to make a colorable claim of equitable tolling or actual innocence. Accordingly, his petition is time-barred. Reasonable jurists would find no basis to encourage further proceedings. A certificate of appealability will be denied.

15

Accordingly, it is HEREBY ORDERED:

1.     Main's petition is DISMISSED. The Clerk of Court is directed to enter judgment pursuant to Fed. R. Civ. P. 58. Any pending motions are DENIED as moot.

2.     A certificate of appealability is DENIED.  The clerk shall immediately process the appeal if Main files a notice of appeal.

DATED this 9th day of July, 2026.

_____
Donald W. Molloy, District Judge
United States District Court

16